(No. 26256.—)

FRANK DAWDY, Admr., Appellee, *vs.* HAL STRICKLAND* *et al.*—(HAL STRICKLAND, Appellant.)

*Opinion filed November 18, 1941.*

JOSEPH C. STEELE, (J. F. EECK, of counsel,) for appellant.

BEAL B. SMITH, and CLEMENT L. SMITH, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on leave to appeal granted to review a judgment of the Appellate Court for the Third District affirming a judgment entered in the circuit court of Greene county in favor of appellee in the sum of $3500, on appeal from the county court of that county.

Appellee, Frank Dawdy, administrator of the estate of Anna Strickland, who died on March 20, 1939, filed a petition in the county court of Greene county for the issuance of a citation against appellant, son of the deceased, under sections 81 and 82 of the Administration act. (Ill. Rev. Stat. 1939, chap. 3, pars. 82, 83.) The petition prayed

that a citation issue against appellant and the Granite City Trust and Savings Bank, requiring that they appear for examination concerning $3500 in bonds of the Washington Theatre Company, alleged to be the property of the estate of the deceased, and then in possession of appellant. On hearing the county court denied the prayer of the petition and an appeal from this decision was taken to, and the matter heard in, the circuit court, with the result hereinabove indicated. The bank was dismissed out of the case.

The evidence shows that from 1928 to 1935 the deceased owned these bonds. They were kept in the defendant bank for safekeeping. On July 1, 1935, on authority of a letter from the deceased, the bonds were turned over to appellant. The bonds were redeemed at maturity, October 15, 1937. Appellant contended on the trial that his mother had given him the bonds as a gift *inter vivos*, while appellee contended that the deceased had but loaned the use of them to appellant, for which he paid interest from time to time. It is undisputed that the bonds were turned over to appellant for the purpose of allowing him to buy an interest in the store at which he worked. He testified, and it is not disputed, that he used the bonds for that purpose and transferred them to the company for shares of stock in the business. Appellant contends here that the most appellee's evidence shows is that the money arising from these bonds was loaned to appellant, and therefore the county court did not have jurisdiction under sections 81 and 82, *supra,* to enter judgment on citation against him.

Section 81, after providing the method of procedure for bringing before the court persons who are alleged to have in their possession property belonging to the estate of a deceased person, provides: "The court shall have power to hear, settle and adjudge all controverted questions of title and claims of adverse title and to determine the right of property." Section 82 provides the remedy in case of refusal to deliver property, and declares that the court's

judgment may be enforced in the premises by a proceeding in contempt or by execution against the defendant where judgment is entered for the value of the property found to be withheld in case it has been converted.

The facts in this case show, as herein stated, that the bonds had been paid nearly two years before the death of the intestate, and were, therefore, not in existence when she died. Appellee's evidence is to the effect that appellant asked his mother if he could have the use of the bonds to buy an interest in the firm where he worked, and that she had told him to go ahead and use them. That evidence also is that he paid her interest on the amount of the bonds. There is also evidence that an attempt was made to have him sign a note for one-half of the value of the bonds, to be executed to his sister, the only other heir of the deceased. There is also evidence that deceased attempted to make distribution of her estate prior to her death by deeding some property to her daughter to compensate for the bonds which she had turned over to defendant.

Counsel for appellee argue that there is no evidence to indicate that the deceased knew that defendant had used the bonds in purchasing stock rather than hypothecating them for a loan of funds with which to buy the stock. There is, however, no dispute of his testimony that she knew that he was to use the bonds to buy the stock and the evidence that he paid her interest on the amount indicates that she did know that he so purchased an interest in the business of the store. She will be presumed to have known the due date of the bonds which were paid nearly two years before her death. Clearly there can be no claim on the part of her representative of title to the bonds.

Petitioner's evidence that appellant paid interest on the amount of the bonds tends to indicate that the deceased knew of the disposition of the bonds in exchange for the stock and that she considered the amount as loaned to the appellant. There is no evidence of payment to her of

coupons on the bonds prior to maturity, as she would have a right to expect if the use only of the bonds was loaned to appellant. The testimony negatives the supposition that the intestate claimed title to the bonds at the time of her death, and while the jury found against the claim of appellant that the bonds were given to him as a gift *inter vivos,* at most, under this record, the transaction can establish only a loan for which appellant is indebted to the estate.

These facts do not give jurisdiction under sections 81 and 82 of the Administration act to apply the methods of enforcing collection provided in those sections. If appellant is indebted to his mother's estate, the remedy is an action at law.

In *Johnson* v. *Nelson,* 341 Ill. 119, this court held that the question whether an intestate who gave money to a son, made a loan or outright gift, could not be determined by citation proceedings under sections 81 and 82 of the Administration act, as, in either event, the title to the money passed to the son and left open for determination no question of title, as title to money loaned passes to the debtor. As was there said: "The purpose of the section, as amended, apart from the recovery of books of account, papers or instruments of title, and the obtaining of information, is to recover possession of specific property, or if converted, its proceeds or value. Section 81, as now in effect, contemplates that the testate or intestate, at the time of his death, held or at least claimed, and that the executor of his will or the administrator of his estate, since his death, either in succession or initially, holds or claims, the title to the property of which possession is sought." Counsel argue that there was no question there of a claim of title by the estate because it was clear the deceased had either given or loaned the money to her son. We are unable to see wherein the distinction sought to be made is of importance here, since it is undisputed that the bonds were used by the son to purchase the stock, with his mother's consent,

and had become due and were paid during her lifetime. Thus she could have no claim for return of the bonds at the time of her death. As was pointed out in *Johnson* v. *Nelson, supra,* it is not within the scope of sections 81 and 82 of the Administration act to enforce collection of an indebtedness, but in such cases the remedy is an action at law.

The judgments of the Appellate Court and circuit court are reversed and the cause remanded to the circuit court, with directions to dismiss the petition.

*Reversed and remanded, with directions.*